**John Frederick TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–95–104–CR.**

Court of Appeals of Texas,
Waco.

Feb. 14, 1996.

Rehearing Overruled March 6, 1996.

Kevin J. Clancy & Frank S. Wright, Dallas, for appellant.

Patrick C. Batchelor, Criminal District Attorney & Damara H. Watkins, Asst. Criminal District Attorney, Corsicana, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

John Frederick Taylor was charged with the misdemeanor offense of driving while intoxicated ("DWI"). TEX.PENAL CODE ANN. §§ 49.04, 49.09(a) (Vernon 1994 & Supp. 1996).[1] He filed a motion to suppress evidence, which was denied. Although the record reflects that a jury had been chosen, Taylor chose to enter into a plea-bargain agreement. The court, in accordance with the terms of the plea agreement, assessed punishment at fifteen days in jail, two years' probation, and a $700 fine. Taylor appeals on two points, asserting that the court erred in denying his motion to suppress and in accepting his guilty plea without a written jury waiver. We will affirm the judgment.

### MOTION TO SUPPRESS

In his first point, Taylor asserts that the court erred in denying his motion to suppress because the police had no reasonable suspicion to stop and detain him. In a hearing on a motion to suppress, the trial judge is the sole and exclusive trier of fact

and judge of the credibility of the witnesses as well as the weight to be given to their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). If the court's resolution of a controverted issue is supported by the record, a reviewing court should not disturb that decision. *Muniz v. State*, 851 S.W.2d 238, 252 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993).

Taylor and the State agree that law enforcement officers may stop and briefly detain persons suspected of criminal activity on less information than required for probable cause to arrest. *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Crockett v. State*, 803 S.W.2d 308, 311 (Tex.Crim.App.1991). An investigatory stop requires only reasonable suspicion to justify the stop. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). To justify an investigative detention, the officer must have specific articulable facts which, premised upon his experience and personal knowledge, when coupled with the logical inferences from those facts, would warrant intruding upon the detained citizen's freedom. *Garza v. State*, 771 S.W.2d 549, 558 (Tex.Crim.App.1989). The validity of the stop is determined from the totality of the circumstances. *Sokolow*, 490 U.S. at 8, 109 S.Ct. at 1585.

Three Corsicana police officers were involved in Taylor's detention and arrest, and each testified at the suppression hearing. Todd Morris testified that, on the morning of July 9, 1994, he was off duty and driving his personal automobile northbound on Interstate 45 south of Corsicana. According to Morris, a white 1992 Ford pickup truck, also travelling north, swerved into his lane twice almost striking his vehicle. Morris used his car phone to call the Corsicana police department.[2] He gave the police dispatcher a description of the truck, its license plate number, and the direction of its travel.

Morris followed the truck, trying to maintain visual contact from a safe distance, as it

---

1. Formerly TEX.REV.CIV.STAT.ANN. art. 6701*l*–1, *repealed* by Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.15, 1993 Tex.Gen.Laws 3586, 3704.

2. Morris was unsure whether he called 911 or the police dispatch number.

exited Interstate 45. Morris testified that, as he followed, the truck crossed the center line several times and almost struck two other vehicles. He stated that the truck reached speeds of seventy miles per hour in areas where the posted speed limit was forty miles per hour. Morris then used his phone to contact an on-duty officer, John Semetko, on Semetko's mobile phone. Morris gave Semetko the description and location of the truck. As Morris followed the truck, he observed Semetko's police vehicle make a u-turn to follow the truck.

Semetko testified that in the early morning hours of July 9, he received information over his police radio requesting an officer to respond to a possible drunk driver. He was informed that an off-duty officer was following a "white crew cab-type Ford truck" at a high rate of speed, that the truck was northbound on Business I–45 which turns into South Seventh Street, and that the truck was weaving. As he proceeded to the Seventh Street location given by the dispatcher, Semetko observed the truck approaching him. The truck crossed the center line, and Semetko took evasive action to avoid a collision. He turned his vehicle around and attempted to follow the truck.

Semetko radioed Officer Erickson that he would be unable to catch the truck.[3] Semetko testified that he lost visual contact with the truck, but that the dispatcher was in "constant contact" with the off-duty officer who was relaying information to Semetko and Erickson on its speed and direction of travel. Erickson's patrol unit passed Semetko's and eventually stopped the truck. When Semetko arrived on the scene, he assisted Erickson in the arrest.

Erickson testified that he was on duty and received a call over the police radio regarding a possible drunk driver at approximately 12:50 a.m. He was informed that an off-duty officer was following a "white Ford pickup, a larger pickup with a larger cab." He was given the truck's location. In route, he

passed Semetko's vehicle. As Erickson followed the truck, he observed it swerve within its lane. He caught up with the truck, stopped it, and later arrested Taylor.

■■■ Taylor argues that the stop of his vehicle was unwarranted because, at one time or another, each officer lost visual contact with his truck[4] and none had continuous surveillance. In determining whether probable cause existed for an arrest or search, the reviewing court examines the cumulative information known to all of the officers who cooperated in the arrest. *Muniz,* 851 S.W.2d at 251; *Woodward v. State,* 668 S.W.2d 337, 344 (Tex.Crim.App.1982) (on rehearing), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985). Likewise, we look at the cumulative information of the officers and the totality of the circumstances in determining whether the investigative stop was justified. *See Sokolow,* 490 U.S. at 8, 109 S.Ct. at 1585.

Officer Morris initially saw a truck being driven in an unsafe manner. He followed the truck and kept in "constant contact" with the police dispatcher. The dispatcher in turn passed the information to Officers Semetko and Erickson. All three participants personally observed erratic driving. Looking at the cumulative information of the officers and the totality of the circumstances, we believe the officers had specific articulable facts that, premised upon their experience and personal knowledge, when coupled with the logical inferences from those facts, justified an investigative detention of the person driving the white truck. *Id.; Garza,* 771 S.W.2d at 558. That person was Taylor. We overrule point one.

### WAIVER OF JURY TRIAL

■■ In his second point, Taylor asserts that the court erred in accepting his plea without a written waiver of a jury trial. Tex. Code Crim.Proc.Ann. art. 1.13 (Vernon Supp. 1996). The State asserts that this issue is not properly before this court, because Taylor entered a guilty plea and did not obtain

---

**3.** Semetko was driving a 1982 Blazer with a top speed of fifty-five miles per hour.

**4.** Morris testified that he "tried to maintain visual contact ... at a safe distance." Taylor asserts

that Morris's statement that he "tried" to maintain contact is proof that he lost contact with the truck.

the trial court's permission to appeal the issue.

The record reflects, and Taylor does not dispute, that a jury was selected to hear his case. Taylor's brief states that a jury was empaneled, but after his motion to suppress was denied, he "decided not to have a jury trial." The docket sheet reflects that Taylor "in open court voluntarily changed his plea to guilty pursuant to an agreement with the D.A.'s office." Taylor does not dispute that the court assessed punishment within the range recommended by the State. He filed a notice of appeal stating his intention to appeal, "among other grounds," the denial of his motion to suppress. Nothing in the record indicates that Taylor received permission from the trial court to appeal the jury-waiver question.

## HISTORICAL BACKGROUND

When the Code of Criminal Procedure was enacted in 1965, article 44.02 provided for a defendant's right to appeal:

**Art. 44.02 Defendant may appeal**

A defendant in any criminal action has the right of appeal under the rules hereinafter prescribed.

Act of May 27, 1965, 59th Leg., R.S., ch. 722, 1965 Tex.Gen.Laws 317, 511. Article 44.08 required a defendant to give notice of appeal "as a condition of perfecting an appeal." *Id.* at 512–13. The notice of appeal could be given orally or in writing. *Id.*

In 1972, the Court of Criminal Appeals issued *Helms v. State*, 484 S.W.2d 925, 927 (Tex.Crim.App.1972), holding that a plea of guilty—voluntarily and understandingly made—waived all nonjurisdictional defects. The *"Helms"* rule also applied to misdemeanors. *Utsman v. State*, 485 S.W.2d 573, 574–75 (Tex.Crim.App.1972).

In 1977, the legislature added the "proviso" to article 44.02:

A defendant in any criminal action has the right of appeal under the rules hereinafter prescribed, provided, however, *before the defendant* who has been convicted upon either his plea of guilty or plea of nolo

contendere before the court and the court, upon the election of the defendant, assesses punishment and the *punishment does* not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney *may prosecute his appeal, he must have permission of the trial court, except on those matters which have been raised by written motion filed prior to trial. . . .*

Act of May 23, 1977, 65th Leg., R.S., ch. 351, § 1, 1977 Tex.Gen.Laws 940 (emphasis added). Thus, the legislature abrogated the *Helms* rule by providing for appellate review after a negotiated guilty plea in two situations: (1) if the defendant had filed a written pretrial motion or (2) if the defendant had obtained the trial court's permission to appeal. The proviso sought to "conserve judicial resources by encouraging guilty pleas in cases where the only contested issue between the parties is some matter . . . that may be raised by written motion filed prior to trial." *Ferguson v. State*, 571 S.W.2d 908, 910 (Tex. Crim.App. [Panel Op.] 1978).[5] Article 44.02 applied to misdemeanors. *Isam v. State*, 582 S.W.2d 441, 444 (Tex.Crim.App. [Panel Op.] 1979).

The requirements of the proviso were jurisdictional. In order to invoke appellate jurisdiction under the proviso, a defendant wishing to appeal from a negotiated plea had the burden to show: (1) the existence of a plea-bargain agreement with the State; (2) punishment assessed by the court within the recommended range; and (3) that the basis of the appellate complaint had been presented in writing, pretrial, to the trial court *or* that the trial court had given permission to pursue the appeal. *Galitz v. State*, 617 S.W.2d 949, 951–52 (Tex.Crim.App.1981). "Absent the showing of all three of these jurisdictional requisites there is no power extant in [the appellate court] to take cognizance of issues 'appealed' by appellants so situated." *Id.* at 952.

## PRESENT LAW

In 1985, the legislature gave the Court of Criminal Appeals authority to repeal certain

---

**5.** *Ferguson* was overruled on other grounds in *Morgan v. State*, 688 S.W.2d 504, 507 (Tex.Crim. App.1985). However, the *Morgan* opinion cites this portion of the *Ferguson* opinion with approval. *Id.*

sections of the Code of Criminal Procedure governing "posttrial appellate and review procedure," if the Court exercised its right "to promulgate rules of posttrial, appellate, and review procedure in criminal cases." Act of May 27, 1985, 69th Leg., R.S., ch. 685, §§ 1, 4, 1985 Tex.Gen.Laws 2472. The rules, however, "may not abridge, enlarge, or modify the substantive rights of a litigant." *Id.* The Court of Criminal Appeals, combining article 44.08 (general notice of appeal)[6] and the proviso to article 44.02, enacted Rule 40(b)(1) of the Appellate Rules:

> ... Notice of appeal shall be given in writing filed with the clerk of the trial court. Such notice shall be sufficient if it shows the desire of the defendant to appeal from the judgment or other appealable order; but if the judgment was rendered upon his plea of guilty or nolo contendere pursuant to Article 1.15, Code of Criminal Procedure, and the punishment assessed does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney, in order to prosecute an appeal for a non-jurisdictional defect or error that occurred prior to entry of the plea the notice shall state that the trial court granted permission to appeal or shall specify that those matters were raised by written motion and ruled on before trial. . . .

TEX.R.APP.P. 40(b)(1). Because it refers to article 1.15,[7] Rule 40(b)(1) only applies to felony pleas. *Id.* Thus, a general notice of appeal does not invoke the jurisdiction of an appellate court after a felony defendant has pled guilty pursuant to a plea agreement. *Id.*; *Lyon v. State*, 872 S.W.2d 732, 735–36 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 114 S.Ct. 2684, 129 L.Ed.2d 816 (1994).

**MISDEMEANOR PLEAS**

In *Lemmons v. State*, 796 S.W.2d 572 (Tex. App.—San Antonio 1990), the defendant pled guilty to a misdemeanor with the understanding that he could appeal the court's denial of his motion to suppress. The court of appeals, determining that Rule 40(b)(1) applies only to felony convictions, resurrected the *Helms* rule to conclude that a plea of guilty or nolo contendere in a misdemeanor case waives all nonjurisdictional defects. *Id.* at 573.

The Court of Criminal Appeals reversed the lower court, holding that the repeal of the proviso to article 44.02 did not revive the *Helms* rule. *Lemmons v. State*, 818 S.W.2d 58, 62 (Tex.Crim.App.1991). Although the Court repealed the proviso when promulgating the Appellate Rules, it did not repeal the basic right of appeal under article 44.02.[8] *Id.* The Court stated that, in retaining the general right of appeal, "We acted on the assumption that the body of caselaw construing the proviso would prevail and still control. So, Rule 40(b)(1) was designed to focus on *'how'* an appeal is perfected rather than to bestow any right of appeal, which this Court lacks power to provide in the first instance." *Id.* The Court held that the "extra notice" requirement in Rule 40(b)(1) applies only to felony plea-bargain cases and that Lemmons' general notice of appeal was sufficient to invoke appellate jurisdiction. *Id.* at 62–63.

We can summarize the holding in *Lemmons* as it pertains to the proviso of 44.02 and the Appellate Rules. First, in granting the Court of Criminal Appeals power to promulgate the Appellate Rules, the legislature did not authorize the court to "abridge, enlarge, or modify the substantive rights of a litigant." Act of May 27, 1985, 69th Leg., R.S., ch. 685, § 1, 1985 Tex.Gen.Laws 2472; *Lemmons*, 818 S.W.2d at 62. Second, al-

---

6. Act of May 27, 1965, 59th Leg., R.S., ch. 722, 1965 Tex.Gen.Laws 317, 512, *repealed by* Act of May 27, 1985, 69th Leg., R.S., ch. 685, § 4, 1985 Tex.Gen.Laws 2472.

7. **Art. 1.15   Jury in felony**
   No person can be convicted of a felony except upon the verdict of a jury duly rendered and recorded, unless the defendant, upon entering a plea, has in open court in person waived his right of trial by jury in writing in accordance

with Articles 1.13 and 1.14. . . . TEX.CODE CRIM. PROC.ANN. art. 1.15 (Vernon Supp.1996).

8. Article 44.02 now reads: "A defendant in any criminal action has the right of appeal under the rules hereinafter prescribed." TEX.CODE CRIM. PROC.ANN. art. 44.02 (Vernon 1979 & Supp.1996). We note that the full text of 44.02 remains in the published version, including the repealed proviso, with the stipulation that the Rules of Appellate Procedure repealed the proviso. *Id.*

though the proviso to article 44.02 has been repealed, the caselaw construing it still controls. *Lemmons,* 818 S.W.2d at 62. Finally, in promulgating the Appellate Rules, the Court of Criminal Appeals could not "abridge" any right of appeal then held by a litigant. *Id.* Thus, in *Lemmons,* because the defendant would have been able to appeal the denial of his motion to suppress if the proviso to article 44.02 were in effect, the Court refused to interpret Rule 40(b)(1) to deny his right to appeal.

The effect, it seems to us, is that the proviso is still in effect for misdemeanors. Thus, Taylor cannot appeal the written jury-waiver question because he did not have permission of the trial court nor had he raised the matter in a pretrial motion. *Galitz,* 617 S.W.2d at 956 (appeal of misdemeanor count under plea bargain). In the absence of the court's permission or a written pretrial motion, we do not have jurisdiction over the nonjurisdictional question of jury waiver. *Id.* at 951–52. To hold otherwise would *enlarge* Taylor's right to appeal—an effect not authorized by the legislature.[9] Interpreting the Appellate Rules to allow Taylor to appeal would "bestow [a] right of appeal" on him that the Court has held it lacks the power to provide. *Lemmons,* 818 S.W.2d at 62.

After reviewing the historical background of the proviso to article 44.02 and the *Lemmons* opinion, we conclude that Taylor did not invoke our jurisdiction to determine his jury-waiver question. Thus, we decline to consider it.

## CONCLUSION

Having overruled the only point properly before the court, we affirm the judgment.

THOMAS, J., not participating.

---

9. In granting the Court of Criminal Appeals power to promulgate the Appellate Rules, the legislature did not authorize the Court to "abridge, *enlarge,* or modify *the substantive rights of a litigant.*" Act of May 27, 1985, 69th Leg., R.S., ch. 685, § 1, 1985 Tex.Gen.Laws 2472 (emphasis added). The Rules of Appellate Procedure reiterate this limited grant of power: "**Relationship to Jurisdiction.** These rules shall not be construed to *extend* or limit *the jurisdiction of the courts of appeals,* the Court of Criminal Appeals or the Supreme Court as established by law." Tex. R.App.P. 2(a).